## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**MARIE E. PORTER,**                          *
                                              *
       **Plaintiff,**                         *
                                              *          **Civil No. TMD 15-1210**
**v.**                                        *
                                              *
                                              *
**CAROLYN W. COLVIN,**                        *
**Acting Commissioner of Social Security,**   *
                                              *
       **Defendant.**                         *

                                    ************

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Plaintiff Maria E. Porter seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 11) and Defendant's Motion for Summary Judgment (ECF No. 12).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 11) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1961, has a ninth-grade education, and previously worked as a driver, housekeeper, and sewing-machine operator.  R. at 22, 32-33, 220-21.  Plaintiff protectively filed an application for SSI on December 9, 2011, alleging disability beginning on November 14, 2010, due to anxiety and arthritis.  R. at 12, 196-201, 216, 220.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 54-87, 92-99.  On February 19, 2014, ALJ Brian P. Kilbane held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 29-45.  On February 28, 2014, the ALJ issued a decision finding Plaintiff not disabled since the application date of "December 12, 2011 [sic]."  R. at 9-28. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on April 10, 2015.  R. at 1-5, 8, 285-88.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 28, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.   Opinion Evidence

The ALJ reviewed the opinion evidence in his decision:

[O]n February 24, 2012, [Plaintiff] saw consultative examiner Frank R. Hershberger, Ph.D. for psychiatric assessment. She indicated on an activities-of-daily-living report that she was independent in activities of daily living and could sustain concentration to watch television, reading newspaper [sic], visit with friends, and do some household chores. [R. at 384-86.] She was pleasant and cooperative during the assessment. Her mood was anxious and her affect was euthymic. Speech and thought processes were logical and coherent. She related that she began experiencing panic attacks at age 14 and noted that they occurred four to five times a week and could last up to an hour. She said that her mood was always down or depressed, and she experienced fatigue. She stated that she had agoraphobia and found it difficult to leave home. [R. at 387.] She stated that she worked at a local hospital in the housekeeping department and [stopped] working in November 2011 (one year after the alleged onset date) due to pain in her knees and panic attacks while at work. She stated that she was involved in mental health therapy for one month at the Hyndman Health Center about 20 years earlier and that . . . her primary care physician prescribed antidepressants and a sedative. The consultative examiner assessed major depressive disorder (recurrent) and panic disorder with agoraphobia. [R. at 390.]

R. at 18-19; *see* R. at 383-90.

On March 5, 2012, a state agency consultant, E. Edmunds, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. § 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective disorders and anxiety-related disorders (R. at 59-60). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. Dr. Edmunds opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration. R. at 59. Dr. Edmunds did not find evidence to establish the presence of the criteria under paragraph C of the

applicable listings. R. at 60. Dr. Edmunds thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 62-65) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in the work setting; and to (9) travel in unfamiliar places or to use public transportation. Plaintiff otherwise was not significantly limited. R. at 63-64.

The ALJ also noted in his decision:

[O]n March 12, 2012, [Plaintiff] presented for physical examination by consultative examiner William Russell, M.D. She stated that she was applying for disability, because she was in a local Social Security office with a friend and was advised by Social Security staff to apply. She stated that she otherwise had no intention of applying for disability. She stated that she last worked in November 2011 doing housekeeping, but that she had to quit, because she could not perform the essential functions of her job. The examiner reviewed x-rays of the left elbow done in September 2011, which showed joint effusion and a possible fracture of the radial neck. [Plaintiff] reported that she was being followed at an urgent care center and was prescribed tramadol for pain, which she said was ineffective. She reported having pain ranging from 3/10 to 10/10 in severity. Her gait was normal on examination and she required no physical assistance for transfers, or to get on or off the examination table. She had diffuse weakness with manual testing of the upper and lower limbs and grip strength was reduced. Seated in supine position, root tension signs were negative and range of motion was mostly normal except for knee flexion, which was limited by obesity. X-rays of the lumbar spine showed lower lumbar degenerative spondylosis. X-rays of the right knee showed moderate degenerative narrowing at the medial tibiofemoral joint and imaging of the left knee showed mild to moderate

> degenerative osteoarthritis.  The examiner diagnosed obesity and polyarthralgias.
> [R. at 391-401.]

R. at 19.

On March 22, 2012, another state agency consultant, S.K. Najar, M.D., assessed Plaintiff's physical RFC.  R. at 61-62.  Dr. Najar opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 61.  Plaintiff frequently could balance and occasionally could stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 62.  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  R. at 62.

On June 27, 2012, another state agency consultant, G. Dale, Jr., Ed.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04 and 12.06.  R. at 75-76.  Dr. Dale opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 76.  Dr. Dale did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings.  R. at 76.  Dr. Dale thus assessed Plaintiff's mental RFC (R. at 77-80) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically

based symptoms and to perform at a consistent pace without an unreasonable number and length

of rest periods; (6) interact appropriately with the general public; (7) get along with co-workers

or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to

changes in the work setting; and to (9) travel in unfamiliar places or to use public transportation.

Plaintiff otherwise was not significantly limited.  R. at 78-79.  Both Drs. Edmunds and Dale

expressed the same opinions about Plaintiff's sustained concentration and persistence limitations:

> Anxiety and mood symptoms along with distractions from somatic issues will
> intermittently disrupt sustained concentration and persistence.  [Plaintiff] would
> be able to complete a normal workday with reasonable breaks.  Anxiety concerns
> will make it difficult at times, but [Plaintiff] would be able to complete a normal
> workweek without significant exacerbation of psych symptoms.

R. at 64, 78.  They further opined that Plaintiff "will have intermittent difficulty with persistence

and [attention/concentration], but she would be able to perform simple tasks on a sustained basis,

from a mental standpoint."  R. at 65, 79.

On October 16, 2012, Allison Evans-Wood, D.O., who had seen Plaintiff since December

30, 2009, completed a Physical Residual Functional Capacity Questionnaire.  R. at 444-47.  Dr.

Evans-Wood's diagnoses included degenerative joint disease, degenerative disc disease,

depression, anxiety, hyperlipidemia, bilateral knee pain, and elbow pain.  R. at 444.  Plaintiff's

prognosis was good.  R. at 444.  According to Dr. Evans-Wood, Plaintiff's pain and symptoms

were occasionally severe enough to interfere with her attention and concentration needed to

perform simple work tasks.  R. at 445.  Because of her anxiety, Plaintiff was capable of

performing only low-stress jobs.  R. at 445.  Dr. Evans-Wood estimated that Plaintiff could walk

one to two city blocks without rest or severe pain.  R. at 445.  Dr. Evans-Wood opined that

Plaintiff could sit for one hour at a time and stand for one hour at a time.  R. at 445.  Plaintiff

could sit and stand/walk for a total of about two hours in an eight-hour workday.  R. at 446.  She

needed to walk for two minutes every hour during an eight-hour workday, and she would require

a job permitting shifting at will from sitting, standing, or walking.  R. at 446.  Plaintiff would

need to take unscheduled, one- to two-minute breaks every two hours during an eight-hour

workday.  R. at 446.  She did not need to use a cane or other assistive device while occasionally

standing or walking.  R. at 446.  Plaintiff could lift rarely less than ten pounds and never twenty

pounds.  R. at 446.  Plaintiff could never twist, stoop, crouch, or climb ladders.  R. at 447.  She

could climb stairs rarely.  R. at 447.  Dr. Evans-Wood opined that Plaintiff likely would be

absent from work about three days per month as a result of her impairments.  R. at 447.

According to Dr. Evans-Wood, Plaintiff had been suffering from her symptoms since December

30, 2009.  R. at 447.

**B.      Hearing Testimony**

**1.      Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in his decision:

> [Plaintiff] has alleged (in testimony and documents submitted in
> connection with this application and appeal) that she is disabled by arthritis in the
> hands and knees, a back condition, obesity, anxiety, and depression.  She stated
> that she gained 50 pounds in a period of a year due to not being able to move
> around.  She stated that she has pain in her legs, knees, hands, and back for which
> she takes tramadol.  She stated that activities make her pain worse, as does sitting
> for long periods.  She testified that she can sit for about 15 minutes before
> needing to get up, stand for about 15 to 20 minutes before having knee pain, and
> walk for about 10 minutes for having pain in the knees and back.  She said that
> she does not use a cane due to difficulty holding one in her hands.  She stated that
> she could make simple meals, do some grocery shopping, and household chores.
> However, she said she has swelling and pain in her hands that affects [sic] her
> ability to do household chores such as washing dishes, preparing meals, and doing
> hair.  She stated that she lies back in a recliner to relieve pressure from her back
> about 6 to 7 hours a day.  She also endorsed symptoms from her mental
> impairments that include panic attacks, rapid heartbeat, and feeling afraid.  She
> said that she has panic attacks when leaving the house and takes Ativan for her
> conditions.  She denied having side effects from medication and said that she has
> difficulty with concentration, memory and focus, because she rarely gets adequate
> sleep.  [Plaintiff] stated in her Function Report that her impairments affect her

ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, remember, complete tasks, concentrate, and use her hands. She said that she uses a cane, but did not indicate that it was prescribed by [a] doctor [R. at 248, 263, 265].

R. at 17-18; *see* R. at 32-42.

### 2.    VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, work experience, and the RFC outlined below in Part III could not perform Plaintiff's past relevant work but could perform the unskilled, light[2] jobs of price marker, garment sorter, or cleaner. R. at 43-44. The VE's testimony was consistent with the *Dictionary of Occupational Titles.*[3] R. at 44. According to the VE, unskilled jobs at the sedentary and light exertional levels require an individual to remain on task 90% of the time. R. at 44-45. A person absent from work more than one or two days per month would not be employable. R. at 44.

### III

### Summary of ALJ's Decision

On February 28, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of "December 12, 2011 [sic]"; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 416.967(b).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a price marker, garment sorter, or cleaner. R. at 14-23.  The ALJ thus found that she was not disabled since the application date of "December 12, 2011 [sic]."  R. at 23.

In so finding, the ALJ found that Plaintiff had the RFC

to perform light work as defined in 20 CFR 416.967(b) except that she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  She can frequently balance and should never climb ladders, ropes, and scaffolds.  Despite her mental limitations, she retains the ability to perform simple, unskilled work on a sustained basis in a competitive work environment with no more than occasional interaction with co-workers and the general public.

R. at 16-17 (footnote omitted).

The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. at 20.  The ALJ found that Plaintiff's physical and mental impairments were treated conservatively with medication and that her daily activities were not limited to the extent expected in light of her complaints of disabling symptoms and limitations.  R. at 20.

The ALJ considered the opinion evidence and found:

As for the opinion evidence, the opinions of the experts who prepared the state agency (DDS) reports are given the greatest weight, particularly the most recent assessment found in the record at [R. at 54-67].  This assessment was affirmed on reconsideration [R. at 69-82] and has been adopted by the undersigned.  The undersigned finds that these expert opinions are balanced, objective, and consistent with the evidence of record as a whole.  Although these experts did not have an opportunity to examine or treat [Plaintiff], the reports

clearly reflect a thorough review of the record and are supportable.  In short, these experts' familiarity with the SSA disability evaluation program and the evidence of record warrants the greatest weight—the opinions given the greatest weight are most consistent with the longitudinal review of the evidence of record.

Considerable weight is given to the assessment by consultative examiner Dr. Russell who opined in March 2012 that from a musculoskeletal perspective, [Plaintiff's] physical abilities would likely improve with adequate pain relief and that she could perform a range of light work [R. at 394].  This opinion is given considerable weight, because it is balanced and supported by objective evidence of record, particularly in view of evidence documenting limited abnormalities on clinical examination and diagnostic studies and conservative treatment.

Less weight is given to the assessment by consultative examiner Dr. Hershberger, who opined in February 2012 that [Plaintiff] would likely experience difficulty with social interaction, loss of concentration, and ability to maintain persistence with tasks.  [R. at 390.]  While the record appears to support that [Plaintiff] might have some difficulty with social interaction as provided for in the [RFC] herein, the remainder of Dr. Hershberger's opinion lacks consistency with the record as a whole.  The assessment by Dr. Hershberger documents activities that [show] an ability to maintain at least some concentration and task persistence, such as the ability to do household chores, independence in activities of daily living, and daily activities such as watching television and reading the newspaper.  [R. at 383-90.]  Accordingly, the undersigned finds that [Plaintiff] is capable of maintaining concentration and task persistence and occasional interaction with coworkers and the general public in accordance with the [RFC] provided herein, and this opinion is given little weight.

Little to no weight is given to the assessment by treating source Allison Evans-Wood, D.O. who opined that [Plaintiff] is limited to performing less than a full range of sedentary work and could be expected to be absent from work about three days per month due to her impairments.  [R. at 443-47.]  This opinion is given little to no weight, because it lacks balance and support by the record.  Clinical examinations of record reveal minimal findings.  [Plaintiff] required only routine and conservative treatment of her symptoms, and she could perform a wide range of normal daily activities.  For these reasons, the undersigned gives this opinion little to no weight.

R. at 21.  The ALJ considered Plaintiff's GAF[4] scores and gave them weight "only to the extent that they are supportive of the findings herein."  R. at 22.

---

[4]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000).  The current

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

---

edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.*   §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erred in evaluating the opinion evidence and her credibility. With regard to the weight given by the ALJ to the various opinions, the Fourth Circuit reiterated the following standard for considering medical opinions. *Dunn v. Colvin*, 607 F. App'x 264, 267-68 (4th Cir. 2015). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. § 416.927. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. § 416.927(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *see Dunn*, 607 F. App'x at 267. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In

other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 416.927(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 416.927(c)(4); *see also Dunn*, 607 F. App'x at 268.

Here, the ALJ gave "little to no weight" to Dr. Evans-Wood's opinion because "it lacks balance and support by the record. Clinical examinations of record reveal minimal findings. [Plaintiff] required only routine and conservative treatment of her symptoms, and she could perform a wide range of normal daily activities." R. at 21. The ALJ gave "considerable weight" to the opinion of Dr. Russell, the consultative examiner, "because it is balanced and supported by objective evidence of record, particularly in view of evidence documenting limited abnormalities

on clinical examination and diagnostic studies and conservative treatment." R. at 21. The ALJ gave "little weight" to the opinion of Dr. Hershberger, the consultative examiner, because it "lacks consistency with the record as a whole," given Plaintiff's activities. R. at 21.

As Plaintiff points out, the ALJ failed to identify any actual, specific evidence that contradicts Dr. Evans-Wood's opinion, other than "minimal findings" on clinical examination, "conservative treatment of [Plaintiff's] symptoms," and Plaintiff's "wide range of normal daily activities." R. at 21. The ALJ neither specified what aspect of Plaintiff's course of treatment was inconsistent with Dr. Evans-Wood's opinion nor identified which of Plaintiff's activities conflicted with the limitations identified by Dr. Evans-Wood. *See Byard v. Colvin*, No. 1:15-CV-11836, 2016 WL 4370063, at *17 (S.D.W. Va. July 26, 2016), *report and recommendation adopted*, No. 1:15-11836, 2016 WL 4370044 (S.D.W. Va. Aug. 15, 2016). Further, in affording "little weight" to Dr. Hershberger's opinion on the basis of Plaintiff's daily living activities (R. at 21), the ALJ failed to address how these activities affected her ability to perform work-related functions for a full workday. *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015). Further, the ALJ "assigned the opinions of non-examining state agency consultants 'considerable weight' because their opinions were 'consistent with the evidence [of record] as a whole,' but failed to specify the evidence to which [he] was referring" (R. at 21). *Greene v. Colvin*, No. 5:15-CV-00243-FL, 2016 WL 4147682, at *4 (E.D.N.C. July 20, 2016), *report and recommendation adopted*, No. 5:15-CV-243-FL, 2016 WL 4148309 (E.D.N.C. Aug. 4, 2016).

While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*,

826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" *Knapp v. Colvin*, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting *Monroe*, 826 F.3d at 191), *report and recommendation adopted*, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016).  Although Defendant now maintains that Dr. Evans-Wood's opinion was inconsistent with the findings of Dr. Russell's consultative examination and the opinions of the state agency consultants, the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."  *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).  In other words, "[l]ong-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *see Ai Hua Chen v. Holder*, 742 F.3d 171, 180 (4th Cir. 2014) (reviewing court must judge propriety of agency action solely by grounds invoked by agency).  "*Monroe* confirms the ALJ's obligation to explain his conclusions and point to the record evidence to support those conclusions.  Only then can a court engage in a meaningful review to determine whether substantial evidence supports the ALJ's decision."  *Knapp*, 2016 WL 4447836, at *3.

In short, "this Court is left to review the medical evidence and determine on its own how the medical evidence supports the decision. . . . [T]hese type[s] of conclusory findings by an ALJ make meaningful review by this Court impossible."  *Switzer v. Colvin*, No. 1:15CV212, 2016 WL 4182755, at *4 (W.D.N.C. July 5, 2016) (citing *Fox v. Colvin*, 632 F. App'x 750 (4th Cir.

2015) (per curiam); *Mascio*, 780 F.3d 632), *report and recommendation adopted*, No. 1:15-CV-00212-MR-DLH, 2016 WL 4203839 (W.D.N.C. Aug. 5, 2016).  Because the ALJ's "analysis is incomplete and precludes meaningful review," *Monroe*, 826 F.3d at 191, remand is warranted in this case.  The Court need not address Plaintiff's remaining arguments.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 11) is **GRANTED**.  Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order shall issue.

Date: September 15, 2016                        /s/
                                     Thomas M. DiGirolamo
                                     United States Magistrate Judge